UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

HAROLD DEWAYNE HARMON,

    Plaintiff

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff HAROLD DEWAYNE HARMON was a passenger aboard the Carnival Glory, hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "Carnival") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.    **THE PLAINTIFF.** The Plaintiff HAROLD HARMON is *sui juris* and is a citizen and resident of Santa Rosa, California for purposes of diversity and brings an action with a matter in controversy which exceeds the sum or value of $75,000 exclusive of interest and costs.

3.    **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), a citizen of a foreign nation of Panama, is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in

1

Miami Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the Plaintiff's matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

   (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

   (b) Had an office or agency in this state and/or county; and/or

   (c) Engaged in substantial activity within this state; and/or

   (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENT**. The incident occurred on December 20, 2019.

8. **LOCATION OF THE INCIDENT.**  This incident involved the Carnival *Glory* which crashed into the Carnival *Legend*.  The Carnival *Glory* crashed into the Carnival *Legend* while attempting to maneuver the Carnival *Glory* near the dock at Cozumel, Mexico.  This crash occurred while the Plaintiff was a passenger onboard the Carnival *Glory*.  Accordingly, the Plaintiff's claim is governed by the General Maritime Law.

9. **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10. **DESCRIPTION OF THE INCIDENT.** Carnival owes a duty of reasonable care under the circumstances.  The circumstances giving rise to this cause of action are as follows.  Carnival's ships dock in numerous ports on a repetitive ongoing basis.  Each Carnival ship is assigned a designated itinerary for a period of time planned and organized by Carnival.  Carnival also knows that certain ports are always part of certain cruise ships' itineraries.  Certain ports have been part of Carnival's cruise itineraries for decades.  Therefore, Carnival is very familiar with the coordination, process, safety procedures, prevailing conditions, locations and other circumstances involved in safely docking and/or maneuvering its ships at and/or near ports on its itineraries, including the port at Cozumel, Mexico.

11. Carnival planned and organized the Carnival *Glory* and Carnival *Legend*'s itineraries such that both cruise ships were scheduled to dock at the port in Cozumel, Mexico on December 20, 2019.  The officers of the Carnival *Glory* and of the Carnival *legend* were in control of the movements of the respective ships.  At all times material the officers of both the Carnival *Glory* and Carnival *Legend* were employees of the Defendant.  Carnival's officers attempted to maneuver the Carnival *Glory* near the dock.  Carnival's officers failed to maintain a proper lookout either by sight, live video feed, global positions, other electronic means and/or by use of other officers or crew.  Carnival's officers failed to control the Carnival *Glory* so as to avoid collision

3

and/or allision with other vessels or fixed objects, including the Carnival *Legend*. Because of these failures, Carnival's officers caused the Carnival *Glory* to crash into the Carnival *Legend*. At the time of this crash, the Plaintiff was a passenger onboard the Carnival *Glory*. This sudden and violent crash caused Carnival's passengers including the Plaintiff to suddenly and strike Carnival's dining room furniture and fall down. As a result of this incident the Plaintiff suffered severe and permanent injuries. These permanent injuries significantly affect the life and abilities of the Plaintiff.

12. During the crash, Carnival failed to comply with numerous applicable industry standards, statutes, and/or regulations including but not limited to the following:

   a. Inland and International Navigation Rule 5 (33 CFR 83.05) which mandates that every vessel shall at all times maintain a proper look-out by sight and hearing as well as by means appropriate in the prevailing circumstances and conditions so as to make full appraisal of the situation and of the risk of collision.

   b. Inland and International Navigation Rule 6 (33 CFR 83.06), Safe Speed, which mandates that every vessel shall at all times proceed at a safe speed so that he or she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions;

   c. Violating Inland and International Navigation Rule 7 (33 CFR 83.07(a) and (b)), Risk of Collision, which mandates that every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

13. **NOTICE**: Carnival knew or should have known about numerous prior incidents involving maritime collisions and/or allisions. These include incidents involving Carnival and/or its subsidiaries as well other incidents widely featured and/or reported in the news and maritime

industry. Carnival knew or should have reasonably known about the following highly reported cruise ship and/or large vessel collisions and/or allisions:

    a. MSC *Opera* in Venice, Italy on June 2, 2019: The Opera suffered from an engine failure. The failure caused the engine to be blocked with its thrust which caused the ship to accelerate. The MSC *Opera* crashed into the San Basilio dock. *See* https://www.npr.org/2019/06/02/729075426/massive-cruise-ship-crashes-into-port-in-venice-injuring-at-least-5; https://www.kpbs.org/news/2019/jun/02/massive-cruise-ship-crashes-into-port-in-venice/;

    b. Norwegian *Epic* in Puerto Rico on February 12, 2019: The Epic ended up off off course in Puerto Rico to deal with reported mechanical issues. The Epic drifted off course due to "prevailing wind" and crashed into two mooring points, damaging both. *See* https://www.insider.com/norwegian-cruise-ship-filmed-crashing-into-a-pier-in-puerto-rico-2019-2;

    c. Carnival *Horizon* in Manhattan, New York on August 28, 2018: The Carnival *Horizon* was arriving at Pier 90 at West 50th Street past the West Side Hightway and smashed into the dock while docking at the pier. https://www.nbcnewyork.com/news/local/carnival-cruise-ship-collides-with-dock-on-manhattans-west-side-officials/1823471/;

    d. Celebrity *Infinity* in Ketchikan, Alaska on June 3, 2016: The Celebrity *Infinity* crashed into the Ketchikan dock. *See* https://www.adn.com/alaska-news/2016/06/03/video-cruise-ship-crashes-into-ketchikan-dock/

    e. Costa Crociere *Costa Concordia* off the coast of Italy on January 13, 2012: Costa Crociere is a wholly owned subsidiary of Carnival Corporation. The *Costa Concordia* struck the rocking outcrop while travelling approximately 16 knots off Isola del Giglio, Italy. The crash caused the vessel to list to the port side, ground just north of

5

the village of Giglio, and rest with most of the starboard side underwater. https://en.wikipedia.org/wiki/Costa_Concordia

f. Staten Island Ferry *Andrew J Barberi* St. George Terminal, New York: The Staten Island Ferry, *Andrew J. Barberi*, crashed into a concrete maintenance pier at the St. George Terminal on October 15, 2003. https://en.wikipedia.org/wiki/2003_Staten_Island_Ferry_crash

Carnival therefore knew or should have known that it must monitor wind, sea, current and tide conditions with docking, maintain a properly lookout; proceed at a safe speed, coordinate docking; and/or take all reasonable precautions to avoid collision and/or allision when docking and/or maneuvering its cruise ships near ports and/or other vessels. Carnival also documents collisions and/or allisions in various ways. That documentation includes minutes of meetings, emails, voyage logs, and/or internal investigations, audits, root cause analysis and/or action reports. Therefore, the cruise line had long-standing actual and/or constructive notice of the dangers caused when cruise ships are not steered and/or operated in a reasonably safe manner.

## COUNT I:
## NEGLIGENCE

14. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1- 13 above.

15. This Count seeks to hold Carnival liable for its negligence which caused the collision and/or allision during which the Carnival *Glory* struck the Carnival *Legend*. At all times material to this action, Carnival owed the Plaintiff a duty to exercise reasonable care under the circumstances. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004); *Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

16. Carnival knew or should have known that its crew must maintain a proper lookout when moving its cruise ships near ports and/or other cruise ships. To reasonably maintain a

properly look out, Carnival knew or should have known that its crew must maintain sight either by live video feed, global positions, other electronic means and/or by use of other officers or crew. Carnival knew or should have known that Carnival's crew must analyze the prevailing conditions and area surrounding Carnival's ships to fully assess the situation and risk of collision and/or allision before moving Carnival's vessels. Based on years of experience, Carnival also knew or should have known that its crew must operate its ships at a safe speed. Carnival knew or should have known that its crew must proceed at a speed which Carnival's crew could reasonably avoid collision and/or allision and stop within a distance appropriate to the prevailing circumstances and conditions which include but are not limited to wind, sea, current and tides. Carnival also knew or should have known that Carnival's crew must use all available means appropriate to the circumstances and conditions to determine if risk of collision and/or allision exists. Carnival knew or should have known its crew must properly coordinate docking with other vessels, analyze the prevailing conditions including monitoring wind, sea, current and tides, and/or properly communicate with other surrounding vessels before proceeding.

17.     Carnival, acting through its crew and/or personnel, breached its duty of care to act reasonably under the circumstances. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to monitor the wind, sea, current and tides. Carnival failed to keep a proper lookout by failing to maintain sight by live video feed, global positions, other electronic means and/or by use of other officers or crew. Carnival failed to coordinate docking. Carnival failed to avoid the collision and/or allision when the Carnival *Glory* struck the Carnival *Legend*. Carnival failed to monitor the wind, sea, current and tides. Carnival failed to properly communicate and/or coordinate its movements with surrounding vessels. Carnival failed to reasonably analyze and assess the prevailing conditions to determine the risk of collision and/or allision. Carnival failed to proceed at a safe speed which it could reasonably avoid collision and/or allision and stop within a distance appropriate to the prevailing circumstances and conditions.

7

Carnival also failed to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and/or Oregon Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

18. At the time of this incident Plaintiff HAROLD HARMON was having breakfast in one of Carnival's onboard restaurants and Carnival's negligence cause Harmon to fall over a chair in the Carnival *Glory*'s dining room. As a direct and proximate result of Carnival's negligence, the Plaintiff suffered severe and permanent injuries including but not limited to a complex tear of the meniscus and ACL in his right knee. Had Carnival acted reasonably under the circumstances, Carnival would not have caused the Carnival *Glory* to strike the Carnival *Legend*. The Plaintiff would therefore never have been injured.

19. **INJURIES**. As a direct and proximate result of Carnival's negligence, the Plaintiff suffered injuries which include but are not limited to a complex tear of the meniscus and ACL in his right knee. These are extremely painful and/or disabling injuries and have caused and will continue to cause severe disability with permanent impairment. These permanent injuries significantly affect the life and abilities of Harmon.

20. Carnival's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By: *s/ John H. Hickey*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**SARAH A. LOBEL, ESQ.** (FBN 88716)
slobel@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*